1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11 | BENITA PALMER, et al.,                )   Case No.: 1:13-cv-01400 - AWI - JLT

12 |            Plaintiffs,                )   FINDINGS AND RECOMMENDATIONS
                                          )   GRANTING IN PART DEFENDANTS' MOTION
13 |       v.                             )   TO DISMISS THE SECOND AMENDED
                                          )   COMPLAINT
14 | SALVADOR VASQUEZ, et al.,            )
                                          )   (Doc. 18)
15 |            Defendants.               )
                                          )
16 | _____    )

17        Defendants California Department of Corrections and Rehabilitation, Darren Brown, Salvador

18 Vasquez, Angela Cooper and Kim Holland (collectively, "Defendants") seek dismissal of causes of

19 action in the Second Amended Complaint filed by Benita Palmer, individually and as guardian ad litem

20 for K.W.; Nicole Palmer, and Christian Smith (collectively, "Plaintiffs") pursuant to Rule 12(b)(6) of

21 the Federal Rules of Civil Procedure. (Doc. 18.)  In addition, Defendants seek to have Plaintiffs' claims

22 for pain, suffering, and emotional distress stricken pursuant to Rule 12(f).  (*Id.*)  Plaintiffs filed their

23 opposition to Defendants' motion, arguing the allegations in the Second Amended Compliant are

24 sufficient to state a claim.  (Doc. 24.)

25        The Court has taken the matter under submission pursuant to Local Rule 230(g).  Having read

26 and considered the arguments presented, the Court recommends Defendants' motion dismiss the

27 Second Amended Complaint be **GRANTED IN PART**.

28 ///

1

I.      **Factual and Procedural History**

On August 30, 2013, Plaintiff Benita Palmer initiated this action by filing a complaint against Defendants (Doc. 1), which she amended on October 21, 2013 (Doc. 7).  On December 27, 2013, the parties filed a stipulation for the filing of a Second Amended Complaint, which was approved by the Court.  (Docs. 11-12.)

On January 6, 2014, Plaintiffs filed a Second Amended Complaint (Doc. 13), which is now the operative pleading in the action.  Plaintiffs assert the Ladwright Lamon Smith (the husband of plaintiff Benita Palmer and the father of plaintiffs K.W., Nicole Palmer, and Christian Smith) "was murdered while incarcerated at the California Correctional Institution, located in Tehachapi, California prison." (*Id.* at 4.)  Plaintiffs allege Smith "was put into a cell with a known convicted first degree murderer, Anthony Taylor," also known as the "Rockabilly Killer." (*Id.* at 7.) According to Plaintiffs, "correction officers failed to observe, watch, patrol, and protect Smith, who was found bleeding in his cell on July 15, 2012.  (*Id.* at 8-9.)  Plaintiffs assert Smith was given inadequate medical care because "[t]he two medical Defendants had difficulty operating electric shock, stop[ping] the leading, and did not call outside sources for assistance."  (*Id.* at 8, 9.)  Further, the plaintiffs allege that "[t]he prison staff failed to evacuate the injured Smith, have the necessary and needed staff, failed to have the proper equipment or even a motorized and effective transportation system."  (*Id.* at 9-10.)

Based upon the foregoing, the plaintiffs assert the defendants are liable for the following causes of action: (1) wrongful death; (2) negligence/ gross negligence under California law against all Defendants; (3) negligence/gross negligence of the California Department of Corrections ("CDCR") employees and agents; (4) civil rights violation by defendant Ken Holland, Warden of the institution, and the CDCR under 42 U.S.C. § 1983; (5) cruel and unusual punishment in violation of the Eighth Amendment of the Constitution of the United States and California Constitution Article 1, Section 17 by all Defendants; (6) violation of the decedent's substantive due process rights under the Fifth Amendment and California Constitution Article I, Section 7; (7) cruel and unusual punishment in violation of the Eight and Fourteenth Amendments to the Constitution of the United States; (8) failure to properly supervise, hire, and train; and (9) loss of freedom of association in violation of the First Amendment to the Constitution of the United States.  (*See generally* Doc. 13 at 15-38.)

2

Pursuant to Rule 41(a)(1)(A)(i), the parties filed a stipulation to dismiss without prejudice the Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of action without prejudice as to the CDCR only.[1]  (Doc. 17.)

Defendants filed the motion now before the Court on January 24, 2014, seeking dismissal of the Second Amended Complaint ("SAC") on the following grounds:

> (1) a private cause of action is not available for an alleged violation of California Constitution Article I, section seventeen; (2) the SAC fails to state a cause of action for violation of substantive due process under the Federal or California Constitutions; (3) the SAC does not allege that Taylor actually injured or killed Smith and so fails to state a violation of the Eighth Amendment; (4) Defendants cannot be held vicariously liable under 42 U.S.C. section 1983; (5) CDCR is not liable under California law for injury to or the death of an inmate; (6) the immunity for discretionary acts under California law applies to Defendants; and (7) the immunity for failure to provide personnel or equipment to prisons under California law applies to Defendants.

(Doc. 18 at 2.)  In addition, Defendants moved to strike the SAC under Rule 12(f) on the "grounds that damages for the decedent's pain, suffering, and emotional distress, and Plaintiffs' pain, suffering, emotional distress, and grief are not recoverable as a matter of law."  (*Id.*)  Plaintiffs filed their opposition to the motion on February 21, 2014 (Doc. 24), to which Defendants replied on February 27, 2014 (Doc. 25).

## II.      Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] Thus, the Court recommends the Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of action be **GRANTED without leave to amend** as to the CDCR.

1
2
3

> alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted). Further, allegations of a complaint must be accepted as true when the Court considers a motion to dismiss.  *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  However, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  Leave to amend should not be granted if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

**III.   Discussion and Analysis**

**A.   Fifth and Seventh Claims for Relief: Cruel and Unusual Punishment**

Plaintiffs' fifth claim for relief is against all Defendants for cruel and unusual punishment in violation of the Eighth Amendment of the Constitution of the United States and California Constitution Article I, Section 17.  (Doc. 13 at 25.)  In addition, Plaintiffs' seventh claim is for cruel and unusual punishment violation of the Eighth and Fourteenth Amendments.  (*Id.* at 30.)  Defendants argue these claims should be dismissed because Plaintiffs "do not sufficiently allege a violation of the Eighth Amendment," and California law does not provide a private cause of action under the provision identified by Plaintiffs.  (Doc. 18-1 at 3-4.)

**1.   Violation arising under the California Constitution**

In the SAC, Plaintiffs assert Defendants are liable for a violation of California Constitution Article I, Section 17, which provides: "Cruel and unusual punishment may not be inflicted or excessive

4

1  fines imposed." Cal. Const., Art. I § 17 (2014).  However, "there is no private right of action for

2  damages arising out of an alleged violation of the cruel or unusual punishment clause of the California

3  Constitution." (*Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal.App.4th 231, 253 (Cal.Ct.App. 2008)

4  (emphasis omitted, citing *Katzbert v. Regents of the Univ. of Cal.*, 29 Cal. 4th 300, 329 (2002)).

5  Plaintiffs concede they are unable to proceed on this claim.  (Doc. 24 at 4.)  Thus, it is recommended

6  that motion as to the Fifth claim for Relief, to the extent it is based upon a violation of Article 1,

7  Section 17 of the California Constitution, be **GRANTED without leave to amend**.

8  2.      Violations arising under the Constitution of the United States

9       As an initial matter, Plaintiffs' Fifth Claim for Relief for cruel and unusual punishment in

10  violation of the Eighth Amendment is not, apparently, brought under 42 U.S.C. §1983.  (*See* Doc. 13 at

11  25.)  On the other hand, Plaintiffs' Seventh Claim for Relief for "Cruel and Unusual Punishment in

12  Violation of the Eighth and Fourteenth Amendments to the Constitution of the United States" is

13  brought pursuant to 42 U.S.C. § 1983.  (*See id.* at 30.)

14  *a.      Fifth Claim for Relief*

15       Amendments to the Constitution do not create direct cause of action.  *Arpin v. Santa Clara*

16  *Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("a litigant complaining of a violation of a

17  constitutional right does not have a direct cause of action under the United States Constitution").  For

18  this reason, the Court recommends the motion as to the Fifth Claim for Relief, to the extent is based

19  upon a violation of the Eighth Amendment, be **GRANTED without leave to amend.**  Though the

20  Court recognizes that this claim for relief could be cured by pursuing it through an action based upon

21  42 U.S.C. § 1983, because this would merely duplicate the Seventh Claim for Relief, the Court

22  recommends that dismissal be without leave to amend.

23  *b.      Seventh Claim for Relief*

24       Section 1983, while not an independent a source of substantive rights, "provides a method for

25  vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation

26  omitted).  Thus, an individual may bring an action for the deprivation of constitutional rights pursuant

27  to Section 1983, which states in relevant part:

28       Every person who, under color of any statute, ordinance, regulation, custom, or usage, of

5

any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a cognizable claim under Section 1983, a plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).  Here, the parties do not dispute that the alleged violation took place by those acting under the color of state law.  However, Defendants argue the facts alleged are insufficient to demonstrate violations of the Eighth and Fourteenth Amendments.

Under the Eighth Amendment, prison officials have a duty to take reasonable steps to protect inmates from physical harm, and one of the "basic human needs" that prison officials must provide is personal safety.  *Hoptowit v. Ray*, 682 F.2d 1237, 1247, 1250-51 (9th Cir. 1982); *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 2006).  To establish a violation of this duty, a plaintiff must demonstrate prison officials were deliberately indifferent to a substantial risk of serious harm to the inmate's safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Not every injury caused by one inmate to another is actionable under the Eighth Amendment. *Id.* at 833. Clarifying the culpability required for "deliberate indifference," the Supreme Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.

*Farmer*, 511 U.S. at 837.  If a defendant should have been aware of the risk of substantial harm but was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188.

Here, Plaintiffs allege "Defendants knew that there was a strong likelihood that Ladwright Lamon Smith was in danger of serious personal harm, and that he would be injured or killed." (Doc. 13 at 30, ¶ 71, emphasis omitted.)  According to Plaintiffs, Smith "was placed into a cell with a known

6

1   convicted first degree murderer, Anthony Taylor.[2]  (*Id.* at 7-8, ¶¶ 3-4, 6.)  Plaintiffs assert that "Taylor

2   had been disciplined for having weapons since his incarceration and has harmed other prisoners" and

3   his "reputation, conduct and actions of violence were known to the prison."  (*Id.* at 8, ¶ 5.)  Despite

4   these facts, Smith was placed in Cell 209 with Taylor, who Plaintiffs assert "suffered from a mental

5   illness which produced his violent behavior, including homicide."  (*Id.*, ¶¶ 5-6.)  Further, Plaintiffs

6   allege "Defendants possessed records showing the criminal history and violent tendencies of Anthony

7   Taylor" and "received complaints regarding the potential for violence resulting from housing Smith

8   with Taylor."  (*Id.*, ¶¶ 72-73, emphasis omitted.)

9          Plaintiffs assert that Smith was "discovered bleeding in Cell 209" on July 15, 2012.  (Doc. 13

10  at 8, ¶ 7.)  They allege correctional officers Brown and Vasquez were on duty that date.  (*Id.* ¶¶ 8-9.)

11  Plaintiffs assert that when Smith was discovered injured, Vasquez "had not been in that area in over an

12  hour and 15 minutes, and was unaware of the latest time a correctional officer had been in that entire

13  area."  (*Id.*, ¶ 8.)  In addition, Brown "only became aware of th[e] …incident after being summoned"

14  by Vasquez.  (*Id.*, ¶ 9.)  According to Plaintiffs, the officers "failed to observe, watch, patrol, and

15  protect Smith as hours and lapsed before and correction officers were in that section of the prison."

16  (*Id.* at 9, ¶ 9.)  Smith died of his injuries.  (*Id.* at 10, ¶ 15.)

17         Defendants argue these allegations are insufficient to state a claim for cruel and unusual

18  punishment in violation of the Eighth and Fourteenth Amendments because "the SAC does not

19  specifically allege how Smith was injured or caused his death."[3]  (Doc. 18-1 at 4.)  Defendants assert,

20  "Without alleging that Taylor actually harmed Smith or caused Smith's death, the allegations that

21  Defendants knew of Taylor's criminal history, violent past, and gang membership are not relevant."

22  (*Id.*)  Though the Court must draw all reasonable inferences in favor of the non-moving party, *See*

23  *Daniels-Hall v. National Educ. Assoc.*, 629 F.3d 992, 998 (9th Cir. 2010), because Plaintiffs are

24

25  [2] Though Plaintiffs allege that Taylor was a notorious murderer known as the "Rockabilly Killer" and, seemingly, rely

26  upon this notoriety as evidence as to the obviousness of the danger Taylor posed, they have failed to allege facts to support this claim.  Indeed, the Court has no information about the crimes Mr. Taylor was found to have committed and, as a result, finds that Plaintiffs' conclusion in this regard of no assistance.

27  [3] Though this is the only argument raised by Defendants, because the Court will recommend the motion to dismiss be granted on this claim, it notes other significant pleading failures so they can be addressed with the filing of the amended

28  complaint and the Court is not subject to multiple rounds of motions to dismiss.  In future, Defendants SHALL raise all issues or they will be determined

7

1  alleging Defendants caused the death of Plaintiff's decedent, Plaintiffs are obligated to allege either that

2  Taylor inflicted the injuries which killed Smith or that Smith inflicted his own injuries due to the

3  conduct of Defendants.

4         Likewise, in general, Defendants object that the complaint fails to provide factual support for

5  the conclusions alleged.  The Court agrees.  For example, the complaint fails to specify exactly what

6  each defendant is claimed to have done wrong.  At first glance, it appears Plaintiffs are alleging that an

7  improper housing determination caused the damages.  However, there is no allegation that any of the

8  individual Defendants had any role in the placement decision.  Likewise, they allege that Vasquez and

9  Brown were correctional officers that had not been through the area where Smith was housed

10 sufficiently on the day of the incident, but there is no factual allegation that they were assigned to this

11 housing unit or that they had any knowledge of Taylor's prior conduct or particularized risk that he

12 posed to Smith.[4]  The implied suggestion that every of the Defendants, including the nurses called to

13 the scene, the correctional officers who were summoned to the area or who had been in the area earlier

14 and the warden who managed the entire prison, all acted collectively is not plausible.  *Iqbal*, 556 U.S. at

15 678.

16         On the other hand, the allegations that the nurses failed to have sufficient medical equipment or

17 failed to call for outside assistance, does not demonstrate the requisite mental intent; at most, it

18 demonstrates Cooper and Lanier acted negligently.  Likewise, the conclusion that Cooper, Lanier,

19 Vasquez or Brown had the duty to address prison overcrowding or staffing levels lacks factual support

20 just as there is no factual support for the implied conclusion that any had role in housing

21 determinations.  Similarly, the claim that Kim Holland implemented policies that failed to provide

22 adequate staffing levels, for example, requires factual support that this policy—or any of the others

23 alleged—bore some relation to the damage suffered.  Finally, there is no factual support for the

24

25  ────────────

26 [4] Though the complaint alleges that "the prison" knew that Taylor had injured other inmates and they allege that they are informed and believe that Taylor also suffered from a mental illness, they fail to allege facts to support that any of

27 individual Defendants knew this.  The allegations that "Defendants possessed records showing the criminal history and violent tendencies of Anthony Taylor" and that "Defendants received complaints regarding the potential for violence resulting from housing SMITH with Taylor," are conclusions without factual support and are contradicted by the earlier

28 allegation that this information was maintained by "the prison."  Plaintiffs must set forth the factual basis upon which they rely to demonstrate that each Defendant had this information

1    conclusion that the correctional officers or the Warden acted with deliberate indifference.

2         Thus, Plaintiffs have failed to state a cognizable claim for deliberate indifference under the

3    Eighth Amendment related to Smith's health and safety, and it is recommended that Defendants'

4    motion to dismiss the Seventh Claim for Relief be **GRANTED with leave to amend**.  *See Farmer*, 511

5    U.S. at 837.

6         **B.      Sixth Claim for Relief**

7         Plaintiffs allege Defendants are liable for a violation of their substantive due process rights

8    arising under the Fifth Amendment of the United States Constitution and Article I, Section 7 of the

9    California Constitution.  (Doc. 13 at 28-29.)  Importantly, however, as Defendants observe: "California

10   law does not recognize a private cause of action for damages for an alleged violation of California

11   Constitution, Article I, section 7."  (Doc. 18-1 at 4) (citing *Ley v. State of California*, 114 Cal.App.4th

12   1297, 1306-07 (2004)).  Furthermore, the Fifth Amendment applies only to actions by the federal

13   government, and requires a "significantly close nexus" between the federal government and the actor

14   for the Fifth Amendment to apply.  *Rank v. Nimmo*, 677 F.2d 692, 701 (9th Cir. 1982).  Therefore, it is

15   recommended that Plaintiffs' Sixth Claim for Relief be **GRANTED without leave to amend**.

16        **C.      Eighth Claim for Relief and Vicarious Liability**

17        Plaintiffs allege Salvador Vasquez, Darren Brown, Kim Holland, Angela Cooper, and LVN

18   Lanier are liable under 42 U.S.C. § 1983 for failure to properly supervise, hire, and train.  (Doc. 13 at

19   34.)  According to Plaintiffs, the defendants had "policies, customs and/or practices" including:

20             an ongoing pattern of deliberate indifference to: the overcrowding of prisoners, the safety
21             and security of prisoners; proper classification according to pertinent factors, including
               but not limited to developmental disability, potential for violence, and gang involvement;
22             adequate staffing in general and the administrative segregation unit in which Smith died;
               [and] measures necessary to promptly detect or respond to the injuries resulting from
23             such altercations.

24   (Doc. 13 at 35.)  According to Plaintiffs, "The customs, policies, and/or practices of said Defendants

25   were a direct and legal cause of Plaintiffs' injuries and the death of Ladwright Lamon Smith in that

26   Defendants failed to comply with court orders to reduce overcrowding, to adequately hire, train, and

27   supervise their employees and/or agents to prevent the occurrence of the constitutional violations

28   suffered by Plaintiffs."  (*Id.* at 36.)  Further, Plaintiffs assert the CDCR and defendant Holland "tacitly

                                                         9

1    encouraged, ratified and/or approved of the acts and/or omissions . . . and knew that such conduct was

2    unjustified and would result in violations of constitutional rights." (*Id.*)

3          Defendants argue the eighth cause of action should be dismissed because it is based solely upon

4    "conclusory allegations," and for this reason is insufficient to state a claim. (Doc. 18-1 at 5) (citing

5    *Iqbal*, 566 U.S. at 677-79).  In addition, Defendants argue that the claim should be dismissed because

6    they cannot be held vicariously liable under 42 U.S.C. § 1983. (*Id.*) (citing, *e.g.*, *Fayle v. Stapley*, 607

7    F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 428, 441 (9th Cir. 1978); *Hansen v. Black*,

8    885 F.2d 642, 645-46 (9th Cir. 1989)).  Defendants observe that Brown, Vasquez, and Cooper are not

9    mentioned by name in the cause of action, and there are no facts that specific how these Defendants

10   "personally participated in the alleged deprivation of Smith's rights." (Doc. 18-1 at 5.)  Although

11   Warden Holland is mentioned, Defendants argue Plaintiffs fail to articulate facts to support finding him

12   liable as a supervisor under 42 U.S.C. § 1983.  (*Id.* at 5-6.)

13         Significantly, there is no *respondeat superior* liability under Section 1983, and the supervisor of

14   an individual who allegedly violated a plaintiff's constitutional rights is not made liable for the violation

15   simply by virtue of that role.  *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, "[a]

16   supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in

17   or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*,

18   880 F.2d, 1040, 1045 (9th Cir. 1989).  In addition, supervisor liability exists "if supervisory officials

19   implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the

20   moving force of the constitutional violation."  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)

21   (quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987) (internal quotation marks omitted). A

22   causal link between a supervisor and the claimed constitutional violation must be alleged specifically.

23   *See Fayle*, 607 F.2d at 862; *Mosher*, 589 F.2d at 441, *cert. denied*, 442 U.S. 941 (1979).

24         Plaintiffs fail to link any defendants in a supervisory position to Smith's injury through the

25   implementation of a custom or policy.  The facts alleged are insufficient to support a determination that

26   the officers had a custom or policy to inadequately supervise, hire, or train subordinate officers.

27   Further, Plaintiffs do not identify policies implemented by any defendants related to overcrowding or

28   the decision to house Smith with Taylor.  As Defendants observe:

The SAC fails to specifically allege that either Warden Holland personally participated in the decision to house Smith with Taylor, that Warden Holland's job duties included personally patrolling the cells of the prison on the date of the incident, or that his job duties included responding to injuries involving inmates. The SAC also does not specifically allege that Warden Holland knew of the decision to house Smith with Taylor prior to the incident so that Warden Holland could have taken steps to avert the incident. The SAC further does not allege that CDCR policies concerning the classification and placement of inmates have been found to be unconstitutional. Although the SAC does allege that CDCR did not comply with Court Orders concerning the reduction of prison over-crowding in general, the SAC does not specifically allege either that the institution where Smith and Taylor were housed was over-crowded or how any such over-crowding caused Smith's death.

(Doc. 18-1 at 6.)  Because Plaintiffs fail to allege a causal link between Defendants and the claimed constitutional violation, it is recommended that the Eighth Claim for Relief for failure to properly supervise, hire, and train be **GRANTED with leave to amend**.

### D.      Immunity of the CDCR

Defendants argue that "[t]he First, Second, and Third Causes of Action arising under California law against CDCR are barred by Government Code section 844.6, which precludes liability on the part of a public entity for injury to a prisoner."  (Doc. 18-1 at 6.)  Plaintiffs do not dispute this assertion. (*See* Doc. 24 at 6-9.)  Consequently, it is recommended that the motion as to the CDCR as to these claims be **GRANTED without leave to amend**.

### E.      Immunity under Cal. Gov't Code § 820.2

Under Cal. Gov't Code §820.2, "except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise vested in him, whether or not such discretion be abused."  According to Defendants, "The decision to place Smith in the same cell as Taylor necessarily involves making a decision as to whether Smith and Taylor were compatible cell mates, and therefore involves the exercise of discretion by those who made this decision."  (*Id.*)  Defendants observe the Ninth Circuit determined "the assignment of inmates within the California prisons is essentially a matter of administrative discretion."  (Doc. 18-1 at 8) (quoting *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997)).  Therefore, Defendants argue that "the immunity for discretionary acts provided by Government Code section 820.2 applies in this instance to any claims asserted under California law alleging that individual Defendants improperly placed Smith with Taylor."  (*Id.*)

Plaintiffs respond that "the individual defendants are not shielded by the discretionary immunity of California Government Code Section 820.2." (Doc. 24 at 7, emphasis omitted.)  Plaintiffs contend that protected discretionary acts include "decisions which are made at the planning stage of the entity's operations rather than routin[e] duties incident to the normal operations of the employee's office or position." (*Id.* at 7-8) (citing *Taylor v. City of Los Angeles Dep't of Water & Power*, 144 Cal. App.4th 1216 (2006).  Plaintiffs contend the decisions made by Defendants were "decisions associated with the everyday carrying out of one's duty," and should not fall under Cal. Gov't Code §820.2.  (*Id.*)

The Supreme Court of California explained immunity for discretionary activities only applies where an employee "in deciding to perform the act that lead to plaintiff's injury, consciously exercised discretion in the sense of assuming certain risks in order to gain other policy objectives." *Johnson v. State of California*, 69 Cal.2d 728, 795 n.8 (1968).  The court observed:

> Immunity for 'discretionary' activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government. Accordingly, to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place.

*Id.*; *see also Barner v. Leeds*, 24 Cal.4th 676, 685 (2000) (immunity under section 820.2 "is reserved for those basic policy decisions which have been committed to coordinate branches of government, and as to which judicial interference would thus be unseemly"). Whether "an employee normally engages in 'discretionary activity'" may be irrelevant if he or she "did not render a considered opinion." *Id.*  In light of the court's decision in *Johnson*, this Court has determined that the decision of where to house an inmate is not a discretionary act within the meaning of Cal. Gov't Code § 820.2, because "the decision regarding what cell to place an inmate … does not require decision making at the level of policy formulation." *Phillips v. County of Fresno*, 2013 U.S. Dist. LEXIS 170511 at *43, 2013 WL 6243278 at *15 (E.D. Cal. Dec. 3, 2013); *see also Cotta v. County of Kings*, 2013 U.S. Dist. LEXIS 88493 at *51, 2013 WL 3213075 at *19 (E.D. Cal. June 24, 2013) ("application of… rules, regulations, or guidelines to determine whether [two individuals] would be assigned to the same cell was a ministerial determination that is not entitled to immunity under Section 820.2").

Defendants rely upon *Munoz*, 104 F.3d at 1098 for the proposition that housing determinations for inmates involve discretionary decision making such to implicate the immunity provided by Cal.

12

Gov. Code § 820.2.  However, *Munoz* was concerned with the *policy* of housing suspected gang member inmates to the SHU and was not concerned with individualized housing determinations made as to specific inmates.  *Munoz,* a petition for writ of habeas corpus brought under 28 U.S.C. § 2254, had no occasion to evaluate whether such an individualized determination implicated the high-level policymaking decisions that the immunity was designed to protect and did not consider the immunity in any fashion.  Thus, the Court does not find *Munoz* to be persuasive or authoritative in this instance.

Thus, because Defendants have not shown the decision to house Taylor with Smith rises to the level of a policy-making decision entitled to immunity under Cal. Gov't Code §820.2, the Court recommends Defendants' motion to dismiss Plaintiffs' wrongful death and negligence claims, on these grounds, be **DENIED**.

Similarly, "decisions regarding job assignments, training and promotion may not be characterized as a quasi-legislative policy-making decision which is sufficiently sensitive to call for judicial abstention from interference that might affect the coordinate body's decision making process of a coordinate branch of government."  *Taylor*, 144 Cal. App.4th at 1239 (internal quotation marks omitted).  As such, Warden Holland is not entitled to immunity under Cal. Gov't Code § 820.2 for claims related to training and supervision of employees because the decisions to "provide… certain levels of training and supervision are ministerial decisions" in which she was "simply carrying out the day-to-day operations."  *See Randolph v. City of E. Palo Alto*, 2008 U.S. Dist. LEXIS 15607, at *34 (N.D. Cal. March 1, 2008).  Thus, based upon the mere facts alleged the Court cannot find the immunity applies and, therefore, Court recommends Defendants' motion to dismiss the claims for negligent training and supervision be **DENIED**.

## F.     Immunity under Cal. Gov't Code § 845.2

Defendants argue they are entitled to immunity for Plaintiff's claims that the unit where Smith was housed was understaffed and that the prison had insufficient medical equipment under Cal. Gov't Code § 845.2.  (Doc. 18-1 at 9.)  Specifically, Cal. Gov't Code § 845.2 provides: "[n]either a public entity nor a public employee is liable for failure to provide a prison, jail or penal or correctional facility or, if such is provided, for failure to provide sufficient equipment, personnel or facilities therein."  Plaintiffs do not dispute that this immunity applies to the state law claims.  (Doc. 24 at 9.)  Accordingly,

13

1   it is recommended that Defendants' motion to dismiss the state negligence claims related to adequate

2   staffing and medical equipment be **GRANTED without leave to amend**.

3          **G.      Motion to Strike Damages Related to Emotional Distress, Pain, and Suffering**

4          Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a district court "may strike from

5   a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  An

6   immaterial matter "has no essential or important relationship to the claim for relief or the defenses

7   being pleaded," while an "[i]mpertinent matter consists of statements that do not pertain, and are not

8   necessary, to the issues in question."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993),

9   *rev'd on other grounds* (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and*

10  *Procedure* § 1382, at 706-07, 711 (1990)).  As a general rule, Rule 12(f) motions are disfavored.

11  *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1234 (S.D. Cal. 2004) (citing *Cairns v. Franklin Mint Co.*,

12  24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998)).

13         Defendants assert that damages for the decedent's emotional distress, pain, and suffering "are

14  not recoverable in a survival action asserted under California law." (Doc. 18-1 at 9-10) (citing Cal.

15  Code of Civ. Proc. § 377.34; *Martin v. California Department of Veteran Affairs*, 560 F.3d 142, 1050-

16  51 (9th Cir. 2009).  Also, Defendants assert that "damages for the decedent's pain, suffering, and

17  emotional distress also are not recoverable under the Federal law causes of action" because the District

18  Court must "look to substantive state law to determine the recovery of damages."  (*Id.*) (citing *Walsh v.*

19  *Tehachapi USD*, 827 F.Supp.2d 1107, 1127 (E.D. Cal. 2013); *Venerable v. City of Sacramento*, 185

20  F.Supp.2d 1128, 1132 (E.D. Cal. 2002), *Estate of Contreras v. County of Glenn*, 725 F.Supp.2d 1151,

21  1155 (E.D. Cal. 2010)).  Similarly, Defendant observe "[d]amages for emotional distress and grief

22  sustained by the heirs of a decedent are not recoverable" under state and federal law.  (*Id.*) (citing

23  *Krouse v. Graham*, 19 Cal.3d 59, 72 (1977)).  Thus, Defendants request that "the portions of the SAC

24  and prayer for damages requesting damages for the Smith's pain, suffering, and emotional distress, and

25  Plaintiffs' own pain, suffering, emotional distress and grief" be stricken pursuant to Rule 12(f). (*Id.*)

26         Importantly, the Ninth Circuit has opined a Rule 12(f) motion is not the proper method by

27  which to strike a claim for specific damages.  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974

28  (9th Cir. 2010).  In *Whittlestone*, the district court struck the plaintiff's claims for lost profits and

14

consequential damages, and the Ninth Circuit examined "whether Rule 12(f) authorizes the district court to strike such matter at all." *Id.* at 973.  Finding Rule 12(f) did not empower the court to strike the claims for damages, the Ninth Circuit explained:

> Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading ... we would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose ... We therefore hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.

*Id.* at 974-75.  Further, the Court observed the plaintiff's claims for damages were not encompassed within the categories of matters that may be stricken pursuant to Rule 12(f), and could not be considered immaterial "because whether these damages are recoverable relates directly to the plaintiff's underlying claim for relief."  *Id.* at 974.  Accordingly, the Court lacks the authority to strike Plaintiffs' claims for damages under Rule 12(f).  However, the Court may convert a Rule 12(f) motion to a Rule 12(b)(6) motion to dismiss. *See Consumer Solutions Reo, LLC v. Hillery*, 658 F.Supp.2d 1002, 1021 ("where a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion to strike, the Court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion").

Because Defendants argument that Plaintiffs are unable to receive the damages requested is properly raised under Rule 12(b)(6), the Rule 12(f) motion to strike is hereby converted to a motion to under Rule 12(b)(6).  Plaintiffs concede that they "are not entitled to pain suffering or grief in a survival action under California statutes."  (Doc. 24 at 9.)  Therefore, it is recommended that Plaintiffs' converted Rule 12(b)(6) motion, as to the alleged damages related to emotional pain, hardship, and suffering, be **GRANTED without leave to amend.**

## V.      Findings and Recommendations

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Defendants' motion to dismiss and motion to strike be **GRANTED IN PART and DENIED IN PART** as follows:

1.      Defendants' motion to dismiss the entire complaint as to the CDCR be **GRANTED without leave to amend**;

2.     The individual Defendants' motion to dismiss the Fifth Claim for Relief be **GRANTED without leave to amend**;

3.     The individual Defendants' motion to dismiss the Sixth Claim for Relief be **GRANTED without leave to amend**;

4.     The individual Defendants' motion to dismiss the Seventh Claim for Relief be **GRANTED with leave to amend**;

5.     The individual Defendants' motion to dismiss the Eighth Claim for Relief for failure to properly supervise, hire, and train be **GRANTED with leave to amend**;

6.     The individual Defendants' motion to dismiss the First, Second and Third Claims for Relief on the grounds of immunity under Cal. Gov't Code § 820.2 be **DENIED** without prejudice;

7.     The individual Defendants' motion to dismiss the First, Second and Third Claims for Relief on the grounds of immunity under Cal. Gov't Code § 845.2 be **GRANTED without leave to amend**;

8.     The individual Defendants' motion to strike Plaintiffs' claims for damages related to emotional pain, hardship, and suffering—converted to a motion to dismiss pursuant to Rule 12(b)(6)— be **GRANTED without leave to amend**; and

9.     Plaintiffs be given leave to file a Third Amended Complaint within fourteen days of an order adopting these Findings and Recommendations.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response thereto shall be filed within 14 days after service of the Objections.

///

///

///

16

1          The parties are advised that failure to file objections within the specified time may waive the

2    right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3

4    IT IS SO ORDERED.

5        Dated:   **March 6, 2014**                     **/s/ Jennifer L. Thurston**

6                               UNITED STATES MAGISTRATE JUDGE